UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60177-WILLIAMS/VALLE

LOUIS VUITTON MALLETIER,

    Plaintiff,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Entry of Final Default Judgment Against Defendants (ECF No. 36) ("Motion"). United States District Judge Kathleen Williams referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 37). Upon review of the Motion, supporting declarations, and the record in this matter, the undersigned recommends that Plaintiff's Motion be **GRANTED**.

### I.     BACKGROUND

**A. Claims Generally**

Louis Vuitton Malletier ("Plaintiff" or "Louis Vuitton") seeks entry of a default final judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of the Amended Complaint and Motion.[1] *See generally*

---

[1] Defendant nisaaccessories.com (Defendant Number 72) was dismissed from the case and, therefore, is not included in the Motion. *See* (ECF No. 21). Further, Plaintiff has not included Defendants beyondfoot.com (Defendant Number 16), chrmyou.com (Defendant Number 22), fullclothes.com (Defendant Number 33), and uppallrun.com (Defendant Number 97) (together, the "Non-Answering Defendants") because the Court previously granted the Non-Answering Defendants additional time to respond to Plaintiff's Amended Complaint through April 30, 2022.

(ECF No. 15) (hereinafter, "Amended Compl."); *see also* (ECF No 36 at 18-33).  Plaintiff is the owner of the Louis Vuitton Marks,[2] which are valid and registered on the Principal Register of the United States Patent and Trademark Office.  *See generally* (ECF No. 15).  The Louis Vuitton Marks are used in connection with the manufacture and distribution of high-quality goods as identified in the Amended Complaint.  *Id.*

Plaintiff's investigator and representative reviewed and visually inspected the various items bearing Plaintiff's trademarks offered for sale through the Internet websites operating under the domain names identified on Schedule "A" ("Subject Domain Names") and determined the products were non-genuine, unauthorized versions of Plaintiff's goods.  *See* (ECF No. 6-1 ¶¶ 9-13) (Declaration of Hadrien Huet in Support of Plaintiff's Ex Parte Application for Entry of TRO, hereinafter, "Huet Decl.").  Based on its investigation, Plaintiff alleges Defendants have promoted, advertised, offered for sale and/or sell various products bearing counterfeit and infringing trademarks that are exact copies of one or more of the Luis Vuitton Marks, without authorization.  *See* Huet Decl. ¶ 9; *see also* Amended Compl. ¶¶ 26-32. The Luis Vuitton Marks have never been assigned or licensed to Defendants and Defendants do not have, nor have they ever had, the right or authority to use the Louis Vuitton Marks for any purpose.  *See* Huet Decl. ¶ 9.  Further, the Luis Vuitton Marks have never been assigned or licensed to be used in connection with any Subject Domain Name that Defendants may operate.  *Id.*

---

*See* (ECF Nos. 32, 34).  Despite the extension, the Non-Answering Defendants did not timely answer or otherwise respond to the Amended Complaint.  Accordingly, by the date set forth below, Plaintiff may supplement the Motion to include the Non-Answering Defendants in its request for default final judgment.  All other Defendants are listed on Schedule "A" and are part of this Motion.

[2] Capitalized terms not defined herein have the meaning set forth in the Amended Complaint or Motion.

According to the Amended Complaint, Plaintiff requests that the Court: (1) cancel, or at Louis Vuitton's election, transfer the domain names at issue to Louis Vuitton; (2) permanently disable, delist or deindex the uniform resource locators ("URLs") of the domain names at issue; (3) require the service providers cease providing services to the domain names and disclose Defendants' identities; and (4) require Defendants, their agents or assigns to (i) assign all rights, title and interest to their Subject Domain Names to Louis Vuitton; (ii) instruct all search engines and service providers to permanently delist or deindex the domain names at issue; (iii) instruct all service providers to permanently cease providing any services to Defendants in connection with all domain names, including Subject Domain Names, and websites, including permanently deleting the Subject Domain Names from its DNS used for the DoH (1.1.1.1); and (iv) permanently close the domain registration accounts in which the domain names are located, in order to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Louis Vuitton's trademarks and infringing upon Louis Vuitton's rights. (ECF No. 36 at 2); *see also* Amended Compl.

### B. Procedural Background

On January 25, 2022, Plaintiff filed its initial Complaint against Defendants, and on March 9, 2022, Plaintiff filed its Amended Complaint. *See* (ECF Nos. 1, 15). On January 26, 2022, Plaintiff filed the *Ex Parte* Motion for Order Authorizing Alternate Service of Process (ECF No. 7), which the Court granted on March 4, 2022. (ECF No 12). On March 10, 2022, Plaintiff served each Defendant with a Summons and a copy of the Complaint via electronic mail and website posting. (ECF No. 24).

To date, Defendants have failed to answer or otherwise respond to the Amended Complaint, and the time allowed for Defendants to respond to the Amended Complaint has since

expired. To Plaintiff's knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply. (ECF No. 36-1 ¶ 9). On April 1, 2022, Plaintiff filed its Request for Clerk's Entry of Default, which the Clerk entered on April 4, 2022. (ECF Nos. 33, 35). The instant Motion followed.

## II.   LEGAL STANDARD

A party may apply to the Court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)). However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Mngmt. LLC*, No. 14-CV-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted). Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth,* 420 F. 3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336

F. Supp. 2d at 1217 (finding evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martinez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

### III. DISCUSSION

#### A. Claims Generally

The Amended Complaint asserts five counts against Defendants: (1) trademark counterfeiting and infringement under § 32 of the Lanham Act, in violation of 15 U.S.C. § 1114 (Count 1); (2) false designation of origin under § 43(a) of the Lanham Act, in violation of 15 U.S.C. § 1125(a) (Count 2); (3) cybersquatting under § 43(d) of the Lanham Act, in violation of 15 U.S.C. § 1125(d) (Count 3); (4) unfair competition under Florida common law (Count 4); and (5) trademark infringement under Florida common law (Count 5). *See* Amended Compl. ¶¶ 47-79.

##### 1. *Trademark Counterfeiting and Infringement Under the Lanham Act (Count 1)*

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citations omitted). Thus, to prevail on a trademark infringement claim, a plaintiff must demonstrate that: (i) its mark has priority; (ii) defendant used its mark in commerce; and (iii) defendant's mark is likely to cause consumer confusion. *Id*. Additionally, the analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act. *Id*. (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)).

5

As to Count 1, Plaintiff alleges that:

49. Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Louis Vuitton Marks. Defendants are continuously infringing and inducing others to infringe the Louis Vuitton Marks by using one or more of them to advertise, promote, offer to sell and/or sell counterfeit and infringing Louis Vuitton branded goods.

50. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

51. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Louis Vuitton and are unjustly enriching Defendants with profits at Louis Vuitton's expense.

\* \* \*

53. Louis Vuitton has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

Amended Compl. ¶¶ 49-53; *see also* ¶¶ 55-56 (alleging false designation of origin in Count 2); ¶¶ 74-79 (alleging common law trademark infringement in Count 5).

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for federal and common law trademark infringement as alleged in Counts 1 and 5.

2.   *False Designation of Origin Pursuant to 43(a) of the Lanham Act (Count 2)*

Section 43(a) of the Lanham Act makes it unlawful for "[a]ny person . . . in commercial advertising or promotion, [to] misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a claim under § 43 of the Lanham Act, a plaintiff must show that: (i) the defendant's statements were false or misleading; (ii) the statements deceived, or had the capacity to deceive, consumers; (iii) the deception had a material effect on the consumers'

6

purchasing decision; (iv) the misrepresented service affected interstate commerce; and (v) it has been, or likely will be, injured as a result of the false or misleading statement. *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

As to Count 2, Plaintiff alleges that:

57. Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Louis Vuitton's detriment.

58. Defendants have each authorized infringing uses of one or more of the Louis Vuitton Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods they advertise and sell are genuine, non-infringing goods.

59. Additionally, Defendants are using counterfeits and infringements of one or more of the Louis Vuitton Marks to unfairly compete with Louis Vuitton and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Louis Vuitton of valuable marketing and educational space online which would otherwise be available to Louis Vuitton, and (ii) reducing the visibility of Louis Vuitton's genuine goods on the World Wide Web and across social media platforms.

\*\*\*

61. Louis Vuitton has no adequate remedy at law, and has sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Louis Vuitton will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

Amended Compl. ¶¶ 57-61.

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for false designation of origin under the Lanham Act as alleged in Count 2.

      *3.     Cybersquatting (Count 3)*

The Anti-Cybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that[:] (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *See Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citation omitted).

> As to Count 3, Plaintiff alleges that as to Defendants 1-8 only:
>
> 63. Defendant Numbers 1-8 have acted with the bad faith intent to profit from the Louis Vuitton Marks and the goodwill associated with the Louis Vuitton Marks by registering and using the Cybersquatted Subject Domain Names.
>
> 64. The Louis Vuitton Marks were distinctive and famous at the time Defendant Numbers 1-8 registered the Cybersquatted Subject Domain Names.
>
> 65. The Cybersquatted Subject Domain Names are identical to, confusingly similar to or dilutive of one or more of the Louis Vuitton Marks.
>
> 66. Defendant Numbers 1-8's conduct is done with knowledge and constitutes a willful violation of Louis Vuitton's rights in the Louis Vuitton Marks. At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Louis Vuitton's rights.
>
>                                     \*\*\*
>
> 68. Louis Vuitton has no adequate remedy at law. Louis Vuitton has suffered and will continue to suffer irreparable injury and damages due to Defendant Numbers 1-8's above described activities if Defendant Numbers 1-8's are not preliminarily and permanently enjoined. Additionally, Defendant Numbers 1-8's will continue to wrongfully profit from their illegal activities.

Amended Compl. ¶¶ 63-68.

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for cybersquatting in violation of § 43(d) of the Lanham Act as alleged in Count 3, as to Defendants 1-8 only.

4. *Florida Common Law Unfair Competition (Count 4)*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-CV-8381, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion'").

As to Count 4, Plaintiff alleges that:

> 70. This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods using or bearing marks that are virtually identical to one or more of the Louis Vuitton Marks in violation of Florida's common law of unfair competition.
>
> 71. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of one or more of the Louis Vuitton Marks. Defendants are also using counterfeits and infringements of one or more of the Louis Vuitton Marks to unfairly compete with Louis Vuitton and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.
>
> 72. Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' websites as a whole and all products sold therein by their use of the Louis Vuitton Marks.

Amended Compl. ¶¶ 70-72.

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for unfair competition under Florida common law as alleged in Count 4.

   5. *Florida Common Law Trademark Infringement (Count 5)*

The analysis of liability for Florida common law trademark infringement under Count 5 is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act in Count 1. *See PetMed Express,* 336 F. Supp. 2d at 1217-18. Accordingly, Plaintiff has satisfied the elements to establish a claim for Florida common law trademark infringement. *See supra* section III.A.1.

  B. **Remedies Available to Plaintiff**

Plaintiff requests injunctive relief and statutory damages against Defendants for trademark infringement under Count 1. (ECF No. 36 at 8-16). As to Count 2, 4, and 5, Plaintiff limits its request for damages to the equitable and monetary damages awarded pursuant to Count 1. *Id.* at 14, 17. Nevertheless, as discussed further below, Plaintiff seeks additional monetary damages under Count 3 (Cybersquatting). *Id*. at 14-16.

   1. *Injunctive Relief as to Count 1*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (citation omitted). Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express,* 336 F. Supp. 2d at 1222-23, because a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction. *See, e.g., Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in

this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (i) it has suffered irreparable injury; (ii) there is no adequate remedy at law; (iii) the balance of hardship favors an equitable remedy; and (iv) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). Plaintiff has carried its burden on each of the four factors. Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [plaintiff's] business reputation and decrease its legitimate sales."). Plaintiff's Amended Complaint and the supporting declarations show that the goods produced and sold by Defendants are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See, e.g.*, Amended Compl. ¶ 25 ("The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' [Counterfeit Goods] are genuine goods originating from, associated with, and approved by [Louis Vuitton]."); ¶ 32 ("Defendants' . . . infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase."). Plaintiff has no adequate remedy at law as long as Defendants continue to operate the Subject Domain Names because Plaintiff cannot control the quality of what appears to be its

11

products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill if Defendants' infringing and counterfeiting continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. Conversely, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, to which they have no right. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products, and potentially harmed by their inferior quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr.11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Moreover, broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.") (citations omitted)). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name.

*See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2).  However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering defendants to disclose all other domain registrations they held and to transfer registration of a particular domain name to plaintiff partly under authority of 15 U.S.C. § 1116(a)).  Indeed, this Court and other courts in this District have ordered the transfer of domain names under similar scenarios.[3]

      Defendants have created an internet-based counterfeiting scheme through which they are profiting from their deliberate misappropriation of Plaintiff's rights.  Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.  Ordering the cancellation or transfer of the Subject Domain Names to Plaintiff, assigning all rights, title, and interest to the Subject Domain Names to Plaintiff, permanently delisting or deindexing the Subject Domain Names and corresponding website URLs from any internet search engine, and permanently closing the domain registration

---

[3] *See e.g., Chanel, Inc. v. Designerreplicachanel.com*, No. 17-CV-62048-KMW, 2018 U.S. Dist. LEXIS 227392 (S.D. Fla. Aug. 22, 2018) (order requiring, inter alia, transfer of domains to plaintiff); *see also Vineyard Vines, LLC v. Individuals, Business Entities, & Unincorporated Ass'ns Identified on Schedule "A,"* No. 21-CV-61991-KMW (S.D. Fla. Dec. 21, 2021) (ordering, inter alia, (i) transfer of domain names at issue as part of grant of permanent injunction; (ii) assignment of all rights, title, and interest to defendants' domain names used to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of plaintiff's trademarks to plaintiff; and (iii) permanent de-indexing or delisting of defendants' domain names from internet search engines); *Richemont Int'l SA v. Keller,* No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (same); *Chanel, Inc. v. aozhu9284*, No. 19-CV-63068-KMW (S.D. Fla. Feb. 24, 2020) (same); *Malletier v. Aaalvsale.com*, No. 21-CV-60790-BLOOM, 2021 U.S. Dist. LEXIS 81124 (S.D. Fla. Apr. 28, 2021) (same); *Louis Vuitton Malletier v. aaalvshop.com*, No. 19-CV-61986-RUIZ, 2019 U.S. Dist. LEXIS 223653 (S.D. Fla. Nov. 21, 2019) (same).

accounts in which the Subject Domain Names are located, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods, are appropriate remedies to achieve this end. Accordingly, Plaintiff should be awarded injunctive relief as sought in Count 1.

       *2.     Statutory Damages for Counts 1, 2, 4, and 5*

In Count 1, Plaintiff also seeks statutory damages under 15 U.S.C. § 1117(c). Section § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). Additionally, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2).

Additionally, the Court has wide discretion to set an amount of statutory damages. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford*, 441 F. Supp. 2d at 852 ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *see also PetMed Express*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").

Moreover, a defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. *Id*. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's

intellectual property rights. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See PetMed Express*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true); *Arista Records,* 298 F. Supp. 2d at 1313 (finding a court may infer willfulness from the defendants' default). Here, the evidence establishes that Defendants intentionally copied the Louis Vuitton Marks for the purpose of deriving the benefit of Louis Vuitton's world-famous reputation. Defendants have also defaulted on Louis Vuitton's allegations of willfulness. *See* Am. Compl. ¶ 31.

Overall, Plaintiff requests a statutory damage award of one million dollars ($1,000,000) per mark, per type of good. This Court and other courts in this District have granted similar statutory damages under the Lanham Act.[4] Accordingly, the undersigned recommends that the District Court award statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities. The damages for Counts 2, 4, and 5 should be limited to the same equitable and statutory damages awarded under Count 1.

### 3. Statutory Damages for Count 3

As to Count 3 (Cybersquatting), Plaintiff seeks additional monetary damages. More specifically, upon a finding of liability, the ACPA empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c). Plaintiff may also elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000 and not more than $100,000 per domain name, as the Court considers just. 15 U.S.C. § 1117(d).

---

[4] *See e.g., Chanel, Inc. v. Designerreplicachanel.com*, No. 17-CV-62048-KMW, 2018 U.S. Dist. LEXIS 227392 (S.D. Fla. Aug. 22, 2018) (awarding plaintiff $1,000,000 against each defendant); *Vineyard Vines,* 21-CV-61991-KMW (ECF No. 41 at 4) (same); *Richemont Int'l*, No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (ECF No. 48 at 4) (same); *Chanel*, 2018 U.S. Dist. LEXIS 227392, at *4 (same).

15

Here, Plaintiff elects statutory damages and submits that in view of the Cybersquatting Defendants' intentional, wrongful behavior, an award in the amount of $10,000 against each of the Cybersquatting Defendants for each of their respective Cybersquatted Subject Domain Names, as outlined on Schedule "B" of the Amended Complaint and Motion, would be just. (ECF No. 36 at 16). The undersigned agrees and recommends that the District Court award statutory damages under Count 3 for Cybersquatting.

## IV. <u>RECOMMENDATION</u>

For the reasons set forth above and pending Plaintiff's supplementation as noted below, the undersigned respectfully recommends that Plaintiff's Motion for Entry of Final Default against Defendants listed on Schedule "A" of the Amended Complaint (ECF No. 36) be **GRANTED**. More specifically, the District Court should permit Plaintiff to supplement the Motion to include relief against the Non-Answering Defendants. Accordingly,

(i)     Within **seven (7) days** from the date of this Report and Recommendation, Plaintiff may seek a Clerk's default as to the Non-Answering Defendants.

(ii)    Within **seven (7) days** of a Clerk's Default, Plaintiff may supplement its Motion to: (i) include the Non-Answering Defendants in its request for relief; and (ii) file an updated proposed Final Default Judgment for the Court's consideration;

(iii)   Plaintiff must serve Defendants with this Report and Recommendation and any supplemental filings, and file a Notice of Compliance regarding the same; and

(iv)    Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, and any supplemental filing, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right

to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida on November 3, 2022.

                                                              ALICIA O. VALLE
                                                              UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Kathleen Williams
     All Counsel of Record